**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MIGUEL NORIEGA-RAMIREZ,
Petitioner,
v.
MARKWAYNE MULLIN, *et al*.,
Respondents.

Case No. 5:26-cv-04801-DMK

**MEMORANDUM AND ORDER GRANTING IMMEDIATE RELEASE**

**I**

Petitioner Miguel Noriega-Ramirez is a citizen and national of Mexico who has lived in the United States continually for the last 21 years. ECF 1 at ¶ 1. In April 2015, Petitioner married his U.S. citizen wife, and in 2023, they purchased their family home in Lancaster, California, where they lived with Petitioner's two youngest children and Petitioner's wife's mother. *Id.* at ¶ 29. Petitioner is also the father of two additional United States citizen children. *Id.* at ¶ 30. On April 4, 2026, Petitioner's wife died when she was struck by a car while she and Petitioner were helping an elderly couple whose truck was smoking on the road. *Id.* at ¶ 2.

Approximately 15 years ago, on December 29, 2011, Petitioner was personally served with a Notice to Appear, charging him under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present without

admission or parole. *Id.* at ¶ 33. He was briefly detained, and then released on a $5,000 bond. ECF 8-1 at 7. On October 16, 2016, Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture were denied, and he was ordered removed. *Id.* at ¶ 34. On August 1, 2017, the Board of Immigration Appeals dismissed his appeal. *Id.*

On June 9, 2026, immigration officials stopped Petitioner while he was driving to a job site one mile from his home, blocking his truck and approaching him with weapons drawn. ECF 1 at ¶ 3. They then arrested Petitioner without a warrant, notice or pre-deprivation hearing. *Id.*

On June 12, 2026, Petitioner moved to reopen his removal proceedings to allow him to apply for cancellation of removal, given the hardship his children would face if they were to be without their sole surviving parent. *Id.* at ¶ 4. On June 16, 2026, the BIA granted Petitioner a stay of removal pending adjudication of his motion to reopen. *Id.* That stay—which prevents Petitioner from being removed from the country—remains in place. *Id.*

**II**

Through the instant petition for writ of habeas corpus, Petitioner alleges he is being detained without statutory authority, and that his arrest and detention without a warrant, notice, or pre-deprivation hearing violates his Fourth and Fifth Amendment rights. *See generally*, ECF 1.

In their Answer, Respondents fail to meaningfully address most of Petitioner's allegations, contending only that Petitioner is not entitled to release under *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), and—with respect to Petitioner's claim for violation of procedural due process—that "Petitioner cannot show that DHS improperly revoked his release when DHS detained him" because "he was immediately issued a Warrant for Arrest upon his detention," and "no more process is due to him." ECF 8 at 3. Respondents then proceed to argue that "[t]he government has very broad authority to revoke release

that it has granted," and that "the appropriate remedy for any [] procedural deficiency would not be an automatic release from custody, but rather to remedy the specific procedural deficiency that might be established." *Id.* at 3-4. Respondents do not address Petitioner's claim that he is being detained without statutory authority.[1]

**III**

Turning first to Petitioner's claim for violation of procedural due process, the Court examines such claims in a two-step analysis: first, the Court determines whether Petitioner was deprived of a constitutionally protected interest; then, if such interest exists, the Court considers "whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). To evaluate the adequacy of procedural protections, the Court applies the *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest. 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

**A**

With respect to whether Petitioner was deprived of a constitutionally protected interest when he was arrested and detained, it is well-established that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight

---

[1] "In our adversarial system of adjudication, we follow the principle of party presentation" meaning that "in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified). Further, "as a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (citation modified). In our adversarial system, the judge does not act as inquisitor, conducting the "legal investigation himself." *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991).

risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Indeed, "[e]ven individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released in 2011 after posting a $5,000 bond. ECF 8-1 at 7. During the past 15 years that Petitioner has spent on conditional release, he has indisputably developed the "enduring attachments of normal life," as described in *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 2596, 33 L. Ed. 2d 484 (1972). Petitioner worked as a tile setter, married a U.S. citizen, purchased a home in Lancaster, and was raising two children there before he was most recently detained. ECF 1 at ¶ 29. He even served as an assistant coach for his son's baseball team, which further reflects his strong ties to his community. *Id.* at ¶ 31. In addition, Petitioner maintains, and the government does not contest, that he complied with the terms of his release.[2] *See generally* ECF 1. Indeed, the warrant for Petitioner's arrest states that it is based upon "the pendency of ongoing removal proceedings against the subject," rather than any violation of the conditions of his release. ECF 8-1 at 3.

**B**

Respondents contend that "no more process is due to [Petitioner]" for the sole reason that he was issued a Warrant for Arrest upon his detention, ECF 8 at 3, but do not otherwise cite to any authority for Petitioner's re-detention. Rather, Respondents merely state that "[t]he government has very broad authority to revoke release that it has granted." *Id.*

---

[2] While Petitioner has one criminal conviction in 2007 for driving under the influence, he has no criminal history that post-dates his release on bond. ECF 1 at ¶ 53.

The Court disagrees.

First, Petitioner is not in “ongoing removal proceedings,” as asserted in the warrant. To the contrary, Petitioner’s order of removal became administratively final over nine years ago, on August 1, 2017, when the Board of Immigration Appeals dismissed his appeal. ECF 1 at ¶ 34. Thus, he cannot be detained pursuant to 8 U.S.C. § 1226(a), on which Respondents presumably rely when they contend that “no more process is due to [Petitioner] because a warrant was issued.[3]

Second, because the removal period for Petitioner expired 90 days after his order of removal became final on October 30, 2017, and he was not detained during any portion of that removal period, he is not subject to detention, but is instead subject to supervision under 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(3) (“If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.”).

While 8 U.S.C. § 1231(a)(6) provides for detention “beyond the removal period” for those determined to be a risk to the community or unlikely to comply with an order of removal, courts have concluded that this statutory subsection only provides for the “*continued* detention of certain noncitizens already in detention, not re-detention of noncitizens at liberty.” *Yunhe B. v. Warden of the California City Corr. Ctr.*, No. 1:26-CV-03307-TLN-CKD, 2026 WL 1733639, at *3 (E.D. Cal. June 16, 2026); *Diallo v. Joyce*, 817 F. Supp. 3d 202, 204 (S.D.N.Y. Dec. 23, 2025) (“under normal circumstances, after the ninety-day removal period ends, a person is required to be released from detention under supervision”); *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) (when a noncitizen is not in detention at the time the removal period runs, “the default status

[3] 8 U.S.C. § 1226(a) provides that “[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.”

... [is] release on conditions, not detention"); *Eduard Safaryan v. Blanche, et al.*, No. 05:26-cv-02445-KES (C.D. Cal. July 8, 2026) (finding detention not authorized under § 1231(a)(6) where Petitioner was detained nearly six years after his removal order became final). Thus, where, as here, a noncitizen has not been detained during the 90-day removal period, and has instead been living freely in the community for over 15 years, the government cannot simply detain him based on the existence of a final removal order because it does not have "a free-roaming right to arrest and detain people any time it sees fit, even a decade after the fact." *Diallo*, 817 F. Supp. 3d at 205; *see also Yunhe B. v. Warden of the California City Corr. Ctr.*, No. 1:26-CV-03307-TLN-CKD, 2026 WL 1733639, at *3 (E.D. Cal. June 16, 2026) ("a years-old final order of removal does not automatically mandate detention under 8 U.S.C. § 1231 without procedural safeguards"). To the contrary, such a lengthy period of release from ICE custody "reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria." *Prasomsy v. Albarran*, No. 3:26-CV-09534-JSC, 2026 WL 2653813, at *4 (N.D. Cal. Sept. 8, 2026).

Accordingly, the Court finds that the government has failed to demonstrate a statutory basis for Petitioner's detention, and Petitioner has a protected liberty interest in his continued freedom. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

**C**

The lack of any statutory basis for Petitioner's detention independently establishes that Petitioner's due process rights were violated when he was arrested and detained.

But even under an analysis of the three *Mathews* factors, the result is the same. First, the private interest at stake is substantial. When Petitioner was released on bond 15 years ago, he acquired "a protected liberty interest in remaining out of

custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release [Petitioner] from custody create[d] an implicit promise . . . that [his] liberty [would] be revoked only if [he] fail[ed] to live up to the conditions of release." *Pinchi*, 792 F. Supp. 3d at 1032 (internal quotation marks, brackets, and ellipses omitted).

Here, Petitioner has spent the last 15 years on bond living a law-abiding life, staying gainfully employed, buying a home, and raising his children. There is no basis on which to find that he failed to live up to any conditions of his release.

Second, the risk of erroneous deprivation here is considerable, given that Petitioner has not received any pre- or post-detention process. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Here, there is no indication that Petitioner's detention advances either purpose. To the contrary, immigration officials already determined 15 years ago that Petitioner would not pose either a flight risk or a danger when he was initially released on bond. *See Fernandez Lopez v. Wofford*, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025). And the government has not pointed to any change in circumstances to demonstrate that Petitioner somehow poses a risk of flight or danger now. *See generally*, ECF 1. Given these circumstances, the risk that Petitioner was erroneously deprived of his private interest is at its "apex" in this case, where Petitioner was "arrested and detained for no discernable reason." *Diallo*, 817 F. Supp. 3d at 210.

Finally, the government's interest in detaining Petitioner without procedural safeguards is negligible. "[T]he government has no legitimate interest in detaining

individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Notice and custody determination hearings are routine processes for Respondents, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."). Thus, any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

On this record, Respondents have not demonstrated that they had any statutory authority to detain Petitioner, and Respondents violated Petitioner's procedural due process rights when they arrested and detained him.[4]

## IV

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return [Petitioner] to the status quo." *Nazarian v. Noem*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). Thus, the status quo here would be Petitioner's prior release on any conditions that might have been imposed prior to his current re-detention. *See Nazarian*, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."); *Esmail v. Noem*, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in

[4] Because the Court finds that Petitioner is entitled to relief on his procedural due process claim, it declines to address the remainder of Petitioner's claims for relief.

ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

While the government argues that the appropriate remedy here should not be immediate release, but should instead be some form of relief that "is narrowly tailored to the wrong," nothing short of release is appropriate where the government has failed to establish that they had the authority to detain Petitioner in the first instance.

**V**

Accordingly, the Court GRANTS the Petition as follows:

(1) Respondents shall release Petitioner Miguel Noriega-Ramirez (A# 200-144-504) from custody immediately on Petitioner's prior conditions of release, if any;

(2) Respondents must return any property or paperwork seized from Petitioner in the course of his arrest and detention; and

(3) Respondents shall file a notice of compliance with this Order no later than October 26, 2026.

The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within thirty days of final judgment in this action. *See* 28 U.S.C. § 2412(d)(1)(B).

IT IS SO ORDERED.

DATED: October 23, 2026

HON. DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE